## In re UNCLAIMED FREIGHT OF MONROE, INC.

### Bankruptcy No. 98BK–30119.

United States Bankruptcy Court,
W.D. Louisiana,
Monroe Division.

Oct. 29, 1999.

Decision Supplementing Opinion
Nov. 2, 1999.

John T. Scott, Monroe, LA, for Debtor.

Roland Charles, Monroe, LA, for Dianne L. Hill.

Frances H. Strange, Shreveport, LA, Assistant U.S. Trustee.

## REASONS FOR DECISION

HENLEY A. HUNTER, Chief Judge.

This matter comes before the Court on an Order to Show Cause why Dianne L. Hill should not be held in contempt for failure to comply with Orders of the Court. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 83.4.1 incorporated into Local Bankruptcy Rule 9029.3. No party at interest has sought to withdraw the reference to the bankruptcy

court, nor has the District Court done so on its own motion. This Court makes the following Findings of Fact and Conclusions of Law in accordance with F.R.B.P. 7052. Pursuant to these reasons, Ms. Hill is found in contempt of this court and sanctions are imposed.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Background

Dianne L. Hill served as a Panel Trustee in the Monroe Division of the United States Bankruptcy Court for the Western District of Louisiana. Her role as a Trustee reached a critical point in late 1998 in the Unclaimed Freight case with the filing of her Trustee's Final Report and Account ("TFR") on December 28, 1998. The United States Trustee filed a Comment and Objection to the Report. The United States Trustee's objection noted, *inter alia*, that the purported copy of an Order of this Court dated November 9, 1998, served by Ms. Hill and included in her report appeared to have been altered, in that certain material had been "obliterated," and the copy served by Ms. Hill on interested parties would suggest that the Order she presented had been granted, whereas, in fact, it was denied.

The United States Trustee suggested that the TFR was "inappropriate, erroneous and premature." The objection also noted a number of other defects in the report, including the failure of the Trustee to object to or take some corrective action concerning a claim that was misfiled in the Unclaimed Freight claims file and pertained to an unrelated debtor. Hibernia National Bank also objected to the TFR, maintaining that the Trustee had improperly administered collateral on which it had a secured claim. A hearing was held on February 3, 1999. The Objection of the United States Trustee was sustained, the objection of Hibernia was sustained in part, and the TFR was disallowed.[1]

Ms. Hill offered conflicting testimony concerning the alterations to the order. While once stating that she had personally altered the order, she then stated that the alteration was actually performed by an employee in her office, who could not be identified. *See February 3, 1999, Hearing on Trustee's Final Accounting Transcript, pp. 16, 26.* Ms. Hill insisted that she contacted the office of the Clerk of the Bankruptcy Court and was advised that the order was "filed" and "valid," and, thus, the change was justifiable, attaching no apparent significance to the fact that the Court had denied the order.[2]

This Court fixed a hearing on March 31, 1999, for Ms. Hill to show cause why she should not be held in contempt and sanctions should not be imposed in connection with the alteration of the Court's order.[3]

---

1. After the objection was filed, but before the hearing, the Court issued its own ruling fixing the claims, thus mooting some of the issues raised in the objections prior to the hearing on the TFR. *See Corrected Minute Entry Regarding Hearing on Objection to Tax Claims with Reasons, January 11, 1999.*

2. *See also letter from Ms. Hill to Mr. William O'Connor, Office of the U.S. Trustee, December 3, 1998, incorporated in the U.S. Trustee Comment and Objection to the TFR.* Ms. Hill wrote: "I contacted court personnel to determine whether the order was valid with the pen marks and was told it was filed and considered valid, and the markings were ignored. I mentioned to my clerk that the judge must have caught his error but did not

'white out' his original denial. I saw later that the order had been 'whited out.' As all the marks were extraneous, I did not consider this a change to the order of the court. My personnel have been admonished not to repeat this activity. It will not occur again." In fact, this was not the first time Ms. Hill was admonished for using "white out". Mr. Truslow testified at the Removal Hearing that he warned Ms. Hill in an April 24, 1997 letter to avoid the use of "white out" and manually writing in the date on her computerized reports. *May 19, 1999 Removal Hearing Transcript p. 53 l. 19.*

3. This was not the only brush with contempt of Court matters involving Ms. Hill during this time frame. On March 2, 1999, Ms. Hill

Following that hearing, Ms. Hill was suspended from practice by Order of the Court dated April 1, 1999, for a thirty day period. No appeal was filed from that Order.

The United States Trustee then sought the removal of Ms. Hill as a Trustee. A hearing was fixed for May 19, 1999. The United States Trustee also sought to compel the filing of accountings and the turnover of all case records. The Motion was granted and an order signed on May 20, 1999 (hereafter the Removal Order or Order of Removal). Ms. Hill filed an appeal, but her efforts to obtain a stay pending the appeal were unsuccessful.

The Order of Removal required Ms. Hill to turnover all case files, financial records, and estate funds to the successor trustee, in accordance with the listing of cases attached to the Order. The Order expressly required that the former trustee file a status report on each case, which report "shall include for each asset case a current Individual Estate Property Record and Report Form (Form 1) and Estate Cash Receipts and Disbursements Record (Form 2)."

Following the removal, the United States Trustee attempted to arrange an amicable transfer of the records. *See e.g. Letter from UST to Ms. Hill, June 8, 1999, and from UST to Ms. Hill's Attorney, June 14, 1999, UST Exhibit # 7.* Those attempts, however, were unsuccessful.

On June 18, 1999, the United States Trustee filed a Motion to Enforce the Order of Removal and to Compel Dianne L. Hill to comply with the Turnover Order. On June 18, 1999, this Court issued an Order directing Ms Hill to turnover all estate property on each of the cases to which she had been formally appointed as Trustee (hereafter the "Order to Compel"). This Order expressly authorized the United States Marshal to enter the offices of Ms. Hill and to remove the items described in the Removal Order, should Ms. Hill fail to appear or in any manner oppose the enforcement of the Court's Orders.

Following the issuance of the Order to Compel, the United States Trustee continued to try to arrange the amicable transfer of the records. *See letters dated June 21 and 25, and July 13, 1999, UST Exhibit # 7.* The June 21st letter demanded the turnover of the records in the manner in which they were kept in the ordinary course of business. Arrangements were agreed upon for the records to be transferred on Wednesday, June 23, 1999. Partial delivery was accomplished on that date.

On July 14, 1999, the United States Trustee filed a Motion for an Order to Show Cause why Dianne L. Hill Should Not Be held in Contempt for Failure to Obey the Orders of the Court entered May 24, 1999, and June 18, 1999. This Court fixed a hearing for August 4, 1999, at 11:00 A.M. Ms. Hill was directed to be present at her office at 9:00 A.M. on that date to (hopefully) finally complete the transfer of estate property and records "in the manner in which they were kept in the usual course of business, to the successor trustees, their agents, or the agents of the United States Trustee." At the 11:00 A.M. hearing, evidence was adduced, a briefing schedule was fixed, and the matter taken under advisement. That present motion is now before the Court for a decision on the merits. Although the United States Trustee filed a Post Hearing Memo-

made an appearance in Case No. 97–30318, *In re Audrey L. Hammett,* involving her noticed application to sell assets of the estate. Ms. Hill was late to Court, explaining that she was delayed for medical reasons. She appeared to be upset, and unprepared to conduct the auction which was required as a result of a higher bid. The Court conducted the auction. At the conclusion of the hearing, the Court was advised that a City Marshal was present with a bench warrant for Ms. Hill in connection with her failure to appear before the City Court of Monroe in a case set for trial that date in which she was the defendant.

randum, Ms. Hill has not filed her memorandum within the time allotted.

### Summary of the Evidence

Extensive testimony was taken at the hearing on the Contempt Motion. Mr. Phillip Reiland, a bankruptcy analyst with the Office of the United States Trustee, testified that his office routinely conducts examinations of the operations of the panel trustees. These examinations take place at the offices of the panel trustees. These operations fall into three stages. The first is an "office visit." The second is a "trial run UST field audit." This operation is performed solely for new trustees, as an introduction to the final and third procedure, a "UST Field Examination."

Mr. Reiland testified that, prior to the removal of Ms. Hill as a trustee, on all the occasions when the audit team visited Ms. Hill's office, her files had contained "Form 1's" (a form the UST uses to assist in the examination of the debtor at the § 341 meeting), activity notes, trustee time sheets, telephone notes, accounts receivable logs, copies of pleadings and correspondence. However, when the documents were turned over to the successor trustee, these documents were in large part not present as required by the Removal Order and the Order to Compel. Thus, the files were not in the condition in which they were maintained in the "ordinary" course of business.

This difference was demonstrated at the hearing by the comparison of the file in the *Bruce* case, Case No. 98–31106, *UST Exhibit # 6,* one of four retrieved by the United States Marshal on June 23, 1999. Earlier on that date, Ms. Hill had turned over 282 case files to Mr. Hastings, one of the successor trustees. Mr. Hastings testified that the files that were turned over to him were incomplete. Many contained only copies of court pleadings, which Mr. Hastings could have obtained, albeit at his own expense and effort, from the court records. Even those records, however, were incomplete. Ms. Hill has filed no status report in any of the cases.

Between the date of the removal and the date of the hearing on the contempt order to show cause, Ms. Hill filed a number of requests for compensation in the cases in which she had previously served as trustee. Mr. Hastings was questioned about five of these cases in his capacity as successor trustee. In these five cases, Ms. Hill sought compensation ranging from $1106.59 to $2121.25. The compensation make specific reference to pleadings which, Mr. Hastings testified, were not turned over to him as the Successor Trustee.

Mr. Hastings also testified that, just that morning, at her office, Ms. Hill told him, her attorney, Mr. Reiland and an Assistant United States Trustee that the records in question had been destroyed.

This Court is constrained to take judicial notice of a post-hearing development in another case involving Ms. Hill that bears closely upon the matter under consideration. On September 1, 1999, a hearing was held in the case of *Peter John Spohn and Verna Rena Spohn, Case No. 98BK–32038.*[4] Ms. Hill was removed as Trustee in the *Spohn* case and Mr. Eugene Hastings was appointed as Successor Trustee. In that capacity, Mr. Eugene Hastings and Morehouse General Hospital jointly moved to have funds in the possession of the successor trustee delivered to the hospital in recognition of the secured claim of the hospital. Ms. Hill objected to the motion on the basis that no provisions had been made to pay her compensation and expenses as the prior trustee.

At the hearing, Ms. Hill testified, acknowledging under oath that the records formerly contained in her files had been destroyed. She, however, stated she could

---

4. The United States Trustee attempted to retrieve documentation on the Spohn case subsequent to the Order to Compel by letter to Ms. Hill's Attorney dated June 25, 1999. The letter expressly requests information regarding accounts receivable. *UST Exhibit # 7.*

not remember just when or how the destruction occurred. However, she stated that some records could be reconstructed from her word processing equipment, telephone logs, postage meter, and by other means. With this stunning development, this Court directed the United States Marshal to accompany Ms. Hill, the Successor Trustee, and the Assistant United States Trustee to her office to collect any items covered by the Turnover Order or Order to Compel. The Marshal was instructed to return later in the day, with Ms. Hill, and to report to the Court the results of the efforts.

To the Court's amazement, not only were numerous records recovered, but funds pertaining to the *Spohn* estate were located which had not been turned over to the Successor Trustee. These funds totaled $864.00 and consist of eleven checks, dated from June 25, 1999, to August 21, 1999. All of these checks post-date *both* the Removal Order and the Order to Compel. Four checks actually post-date the contempt hearing. Another is dated August 4, 1999, the date of the contempt hearing, and presumably received by her afterwards. *See Court Exhibit # 5, in globo, Spohn hearing, September 1, 1999.*

5. The facts in the *Spohn* case are strikingly similar to the *Unclaimed Freight* case. In both, Ms. Hill administered assets that were encumbered in favor of secured creditors. The encumbrance in the *Spohn* case of the debtor's accounts receivable to Morehouse General Hospital was readily ascertainable from the schedules. In the *Unclaimed Freight* case, while the debtor's schedules were silent as to Hibernia's encumbrance and debtor's attorney testified that he was not aware of the same, a simple UCC records search would have revealed Hibernia's security interest in the inventory. In fact, documents retrieved from Ms. Hill's office on September 1, 1999, indicate that she was aware of Hibernia's lien on the inventory on the *Unclaimed Freight* inventory as early as February 27, 1998, *See Exhibit A, § 27.* Much of the entire debacle regarding the Hibernia collateral could have been avoided by Ms. Hill simply withdrawing the request to sell the inventory prior to presenting the order to consummate the sale. However, at the hearing on the TFR, Ms. Hill announced she intended to attack Hibernia's

Numerous documents were downloaded from Ms. Hill's computer word-processing program or were retrieved from various locations in the office. These documents are described on the attached *Exhibits A and B.*

Ultimately, for reasons orally assigned at the hearing on September 1, 1999, Ms. Hill's objection to the transfer of the funds to Hibernia was overruled.[5] Further, the Court, *sua sponte*, suspended Ms. Hill from practice in the United States Bankruptcy Court for the Western District of Louisiana. *See also Reasons for Order Concerning Suspension from Practice and Order of Suspension from Practice entered September 1, 1999.*[6]

*Applicable Law*

 Criminal contempt proceedings vindicate the Court's power and authority without reference to any party. Civil contempt vindicates the rights of aggrieved persons under valid court orders. The aggrieved party in civil contempt proceedings may receive coercive or compensatory relief, reimbursing that party from the losses of the adversary's non-compliance.

lien as preferential. *See Transcript, p. 57, l.25.* Mr. Hastings testified that in his opinion as a Trustee, the administration of these secured assets in both the *Unclaimed Freight* and *Spohn* cases derived no benefit to the unsecured creditors. In any event, there was no distribution in either case that would justify any compensation to Ms. Hill under 11 U.S.C. § 326.

6. The suspension order also formally removed Ms. Hill as Counsel to the Trustee in two cases, *Healthy Lifestyles, Inc.*, Case No. 97–30847 and *Tracy Joe McLendon and Sheila Ann McLendon*, Case No. 98–31797, in which she was formerly appointed as Counsel to the Trustee, to the extent such appointment has not been mooted by her removal as Trustee. Ms. Hill expressly objected to the introduction of the documents recovered from her office on those matters, on the basis of the attorney-client privilege. This argument is somewhat hard to follow, unless Ms. Hill had conversations with herself that would be subject to the privilege.

*Louisiana Ed. Ass'n v. Richland Parish Sch. Bd.,* 421 F.Supp. 973 (W.D.La.1976), *aff'd,* 585 F.2d 518 (5th Cir.1978). A bankruptcy court has the authority to conduct civil contempt proceedings. *Placid Refining Company v. Terrebonne Fuel and Lube, Inc. (In Matter of Terrebonne Fuel and Lube, Inc.),* 108 F.3d 609 (5th Cir. 1997).

■ The Fifth Circuit has delineated the test for civil contempt. In *Piggly Wiggly Clarksville v. Mrs. Baird's Bakeries, Inc.,* 177 F.3d 380 (5th Cir.1999), the Court observed that the test for contempt requires the showing that (1) a court order was in effect; (2) the order required certain conduct; and (3) the respondent failed to comply with the order. In civil contempt, the burden of proof is clear and convincing, as opposed to preponderance of evidence. *Travelhost, Inc. v. Blandford,* 68 F.3d 958 (5th Cir.1995). There, the Court stated that the clear and convincing standard is higher than preponderance, but not as high as beyond a reasonable doubt.

■ Once the movant has established the failure to comply with an order, then the respondent bears the burden of showing mitigating circumstances that might permit the court to withhold exercising its contempt power. *Whitfield v. Pennington,* 832 F.2d 909 (5th Cir.1987). However, not even the Fifth Amendment's privilege against self incrimination is a defense for a former trustee's refusal to comply with the court's order to turnover files and records maintained for the bankruptcy estate. *In re Grand Jury Proceedings,* 119 B.R. 945 (E.D.Mich.1990).

### Analysis

The Order of Removal required Ms. Hill to "turnover all case files, financial records, and estate funds in each case listed . . . to the successor trustee within 15 days of the entry of the order" and "turnover a status report for each case listed . . ., which report shall include for each asset case a current Individual Estate Property Record and Report (Form 1) and Estate Cash Receipts and Disbursement Record (Form 2). Dianne Hill shall additionally provide any pertinent information required by the successor trustee that is not otherwise provided in the case file." *Order dated May 20th, 1999.*

The Order to Compel required Ms. Hill to "turnover all of the Estate Property (including but not limited to: files, financial documents, funds and other assets and the Records) (including but not limited to: status reports and Forms 1 & 2) on each of her formerly assigned cases without a final decree to the successor trustee or to the United States Trustee where there is no successor trustee." *Order dated June 18, 1999.*

■ There can be little doubt that the test has been met here. There were, in fact, two court orders in effect. Both simply required Ms. Hill to (1) turnover (a) records and (b) funds and (2) to file status reports in each of the cases from which Ms. Hill was removed as trustee. Ms. Hill failed to comply with both prongs of the orders. Ms. Hill's only explanation, other than that the records were destroyed, is a statement she made on September 1, at the hearing in the *Spohn* case. There she observed, evidently in an effort to excuse her non-compliance, that the turnover of the file contents in their entirety was not required by the order, apparently a reference to the original turnover order. While it is true that the removal order specified "case files, financial records, and estate funds in each case listed" and the Order to Compel referred to "files, financial documents, funds and other assets and the Records . . .", Ms. Hill's attempt to quibble over the differing language of the orders falls on deaf ears. In light of the history of Ms. Hill's understanding of this Court's orders, one might think she would simply comply, rather than again applying her own gloss or interpretation to the same. Regardless of the difference in the descriptions of the items, both orders clearly

required Ms. Hill to file a status report in each case, which she has not done.

■ Ms. Hill did not testify at the contempt hearing, offered no evidence of any mitigating circumstances, and filed no brief. The Court does note that her Counsel argued at the contempt hearing that she did not have the intent to violate the Court's order. Instead, he characterized her actions (or inactions) as "unintelligent" (certainly an understatement of classic proportions). However, intent is not an element in civil contempt matters. Instead, the basic rule is that all orders and judgments of courts must be complied with promptly. *Jim Walter Resources v. Intern. Union, Etc.*, 609 F.2d 165 (5th Cir. 1980).

■ Of course, Ms. Hill did testify on September 1, 1999, affirming under oath her earlier statement to Mr. Hastings that the records were destroyed. The destruction of the records could possibly be a mitigating circumstance, had they been destroyed by a fire or flood. However, Ms. Hill has offered no explanation, other than her statement on September 1, 1999, that she could not remember the details of the destruction. This Court does not find sufficient evidence of a mitigating circumstance. Were we inclined to do so, Ms. Hill is hard-pressed to explain her non-compliance with the portions of the orders that required her to file status reports.·

Additionally, Ms. Hill testified in the *Spohn* matter that she was able to reconstruct certain documents and time and expense records from various sources, including her word processing program. Thus, it was incumbent upon Ms. Hill to make every effort to do so without delay. Her continued intransigence in the face of repeated efforts by the Court and the United States Trustee to seek compliance is without any justification whatsoever. Here, the only conclusion that can be adduced is that Ms. Hill willfully and deliberately flouted the Court's directives.

Having determined that the test for civil contempt has been met, and that there is no evidence of any mitigating circumstances, these reasons will now address an appropriate remedy.

### Compensatory Damages

■ The Court requested briefs on the subject of an appropriate remedy, inasmuch as civil contempt is intended to compensate the aggrieved party for its losses resulting from non-compliance with the Court's orders. As noted *supra*, Ms. Hill has not filed a brief. The United States Trustee suggests two possible courses of action.[7]

First, the United States Trustee suggests that the denial of all compensation in all of the cases in which Ms. Hill served is warranted. Secondly, the United States Trustee notes that the Successor Trustees have suffered damages in that the cases formerly handled by Ms. Hill have required both curative work and action to move the cases toward completion. Many of these efforts will go uncompensated. Thus, the United States Trustee suggests that Ms. Hill compensate Mr. Hastings for these services.[8]

---

7. The United States Trustee establishes, maintains, and supervises the panel trustees in cases under Chapter 7 and 11. That office also supervises the administration of cases and trustees in cases under Chapters 7, 11, 12 or 13, whenever the United States Trustee deems it to be appropriate. The United States Trustee also supervises applications filed for compensation and may, when deemed to be appropriate, file comments or objections to such applications. 28 U.S.C. § 586.

8. Mr. Hastings' affidavit filed with the brief of the United States Trustee reflects that Mr. Hastings was appointed as successor trustee in 98 cases and received 188 case files as the agent of the United States Trustee. He participated in the contempt hearing and expended 7.5 hours in preparation and prosecution of same. His hourly rate is $150.00. In addition, the Court takes judicial notice of the fact that Mr. Hastings spent approximately 5 hours in attendance at the hearing on the *Spohn* case on September 1, 1999. Thereafter, he was charged with the duty of copying a

These reasons will now examine the compensation scheme for Chapter 7 Trustees and related issues to determine which, if any, of these remedies are available.

### 1. The Compensation Scheme of 11 U.S.C. § 326

In addition to the requests for compensation Ms. Hill has filed in the bankruptcy court, she has also filed a pleading in the District Court seeking compensation in over 287 cases.[9] In the memorandum supporting that motion, Counsel to Ms. Hill, while acknowledging that a trustee is paid according to the percentages set forth in 11 U.S.C. § 326 in asset cases, asserts that "[i]f she is precluded from taking the case to completion, for the percentage fee award, her compensation is based on actual time expended. The customary fee for Movant while serving as trustee is $100.00 per hour and she seeks this fee for the work she performed administering the case through the date she relinquished the files."

This statement is totally unsupportable. We have already seen that Ms. Hill scarcely "relinquished" much of anything. But, most importantly, the compensation scheme of a Chapter 7 Trustee is regulated by 11 U.S.C. § 326. Ms. Hill's applications for compensation ignore this entire scheme, which not only regulates the compensation of a trustee, it also expressly regulates the method of computation of a successor trustee.

The compensation of a Chapter 7 trustee is "capped" at the percentages set forth in 11 U.S.C. § 326. It is based on monies actually disbursed or turned over in the case by the trustee to parties in interest, and is unconditional. *Matter of England*, 153 F.3d 232 (5th Cir. 1998).

In order to recover, the trustee must submit an appropriate fee application. *In re Greenley Energy Holdings of Pennsylvania, Inc.*, 94 B.R. 854 (Bankr. E.D.Pa.1989). The trustee is *never* entitled to maximum compensation as a matter of right. Any award, within the maximum rate, is subject to the discretion of the court, to be determined based on the reasonable value of the services. *Id., citing 2 Collier on Bankruptcy*, ¶ 326.01, at 326–5.

The compensation for successor trustees is also fixed by the statute. 11 U.S.C. § 326(c) provides:

"If more than one person serves as trustee in the case, the aggregate compensation of such person for such service may not exceed the maximum compensation prescribed for a single trustee by subsection (a) or (b) of this section, as the case may be."

One Court recently observed:

number of exhibits which he was directed to return to the court. The Court anticipates that task would require at least 5 hours to complete.

Mr. Hastings also submitted an affidavit attesting to his efforts in the completion of 6 consensual sales. He assisted creditors in obtaining orders and deeds without compensation. His affidavit reports that he is informed that Ms. Hill obtained compensation for those sales. Mr. Hastings spent 12 hours on those matters. Additionally, Mr. Hastings reported that he has expended time on cases where Ms. Hill administered property which was not property of the estate or otherwise failed to handle in a prudent manner. Further, Ms. Hill has already been paid the compensation allowable under 11 U.S.C. § 326 in other cases, but he will have to file a Trustee's Final Account of Distribution and Application for Closing and Discharge in a minimum of 6 cases, for no compensation, except possibly

$60.00 paid on closing. Mr. Hastings does not provide an estimate of time for these anticipated services, but the Court would estimate a minimum of 2 hours for each case, for a total of 12.0 additional hours.

Further, Mr. Hastings reports that he has expended over 27.75 hours in various cases outlined on his Exhibit "A", for which he anticipates receiving no compensation. Thus, were this remedy available, this Court estimates the value of Mr. Hastings services for a total of 65.50 hours at $150.00 per hour, or $9825.00, plus expenses.

9. *Rule to Show Cause Why Prior Trustee Should Not Be Paid Compensation*, United States District Court for the Western District of Louisiana, under Docket No. CV 99–1005. This Court is hopeful that the District Court will decide that the compensation issues should first be resolved in this forum.

"The proper method for calculating a trustee fee cap involving the service of more than one trustee within a single chapter of the Bankruptcy Code is to include all disbursements during the administration of the estate."

*In re Arius, Inc.*, 237 B.R. 843 (Bankr. M.D.Fla.1999).

 Thus, there is no support under 11 U.S.C. § 326 for Ms. Hill's applications for compensation, absent their being correlated to disbursements to creditors. Unfortunately, the same statutory scheme bars an award to Mr. Hastings as suggested by the United States Trustee, although in these (hopefully) unique circumstances, the temptation is strong.

 However, the same result is not required as to six Consensual Sale matters for which Ms. Hill received the compensation, but Mr. Hastings was required to complete the sale.[10] Compensation in those matters is governed by 11 U.S.C. § 506(c) and is not capped by 11 U.S.C. § 326. Accordingly, as to those matters, Ms. Hill should not be permitted to profit to the detriment of the successor trustee. The sales at issue occurred in the following cases: *Fulford*, 99–30259, sale to Ford; *Jones* 99–30147, 2 sales to Green Tree and Mercedes Benz; *Mize* 98–32214, sale to John Deere; *Nielson* 98–30027, sale to American Bank of Ruston; *Stokes*, 99–30398, sale to Richland State Bank, for a total of $1500.00.

### 2. The Former Trustee's Applications for Compensation are Incompatible with the Lack of Records

 The fact that the compensation is fixed by statute does not, however, neces-

sarily obviate the need for time records or for a proper application. In *In re Guyana Development Corporation*, 201 B.R. 462 (Bankr.S.D.Texas 1996), the Court stated:

"The IRS contends that there is no point in submitting time records if the trustee is to receive percentage based compensation. This contention reflects a misapprehension of the role of time records in the Court's determination of reasonable compensation. Time records do not simply record the number of hours worked; they detail the type of work done. Regardless of the method of compensation and regardless of the type of professional fees at issue, the Court must evaluate the complexity and necessity of work done on behalf of the estate in order to determine appropriate compensation. The trustee, like other professionals for the estate, must demonstrate the reasonableness of his requested fee by showing that the case required work and that he, in fact, performed that work and did not simply delegate all activity to other professionals."

*Id.*, p. 481.

The Court then observed that the requirements for time records were "diverse," and summarized a number of cases reaching different results on the duty of the trustee to keep time records.

Thus, were Ms. Hill's applications before the Court for consideration in a different scenario, either in support of compensation based on disbursements, or, for example, in a situation where time and expense records are the starting point for a determination of reasonable compensation (such

---

**10.** Consensual Sales pursuant to 11 U.S.C. § 363 and compensation and expenses regarding same pursuant to 11 U.S.C. § 506(c) are authorized in the Western District of Louisiana by Standing Orders. Ms. Hill testified on September 1, 1999, that she was unaware of the Standing Orders authorizing Consensual Sales, but was aware of only the "policy" of the court fixing compensation in such sales at $250.00. Actually, maximum compensation of $350.00 for immovables and $250.00 for movable property are authorized routinely, with the Trustee having the right to seek additional sums, based on proper application and an actual hearing.

as an application for compensation by Counsel to a Debtor–in–Possession), her applications remain problematical.

In pleadings filed in both this and the District Courts, Ms. Hill requests compensation and expenses on a case-by-case basis, and also seeks compensation regarding eight "pending consensual sales." The fact that she has been able to itemize her time and expense records in 287 cases is scarcely compatible with her professed inability to produce the records. This contradiction can best be demonstrated by an examination of her compensation claim in the Spohn case. There, she relied upon an activity sheet detailing her time and expenses. These items include such specific items as:

| 12/01/98 | 0.8 Hours | Notice to debtors of estate to remit funds |
| 12/02/98 | 2.3 Hours | Notice to debtor re change of address |
| 12/09/98 | 0.3 Hours | Tel conf w mortgage clerk |
| 01/11/99 | 1/5 Hours | TRS to insrs and health providers for turnover |
| 03/19/99 | 0.8 Hours | Set up letters to patients/send 198 demand letters |

These hours supposedly total 18.8 hours and total expenses of $80.69. The demand letters alone account for $65.34 in postage expense. It strains credulity to suggest that Ms. Hill can account for sending 198 demand letters at a cost of $65.34 while simultaneously claiming her records were mysteriously destroyed.

 Moreover, the applications are defective on their face. All applications for compensation are required to comply with Local Bankruptcy Rule 2016–1, which incorporates a requisite showing of the factors relative to the quality of representation in accordance with *In the Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977), and *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974). The applications should reflect a chronological listing of the time expended and the services performed. The application should also include a summary sheet breaking down the time and expenses by project category. All applications exceeding $500.00 must be noticed for a hearing which counsel must attend. All pleadings, including applications for professional compensation, must be served in accordance with LBR 9013–3 and accompanied by a Certificate of Service. Ms. Hill's applications were not noticed for hearings and were not served on any party at interest.

### 3. The Former Trustee's Conduct Warrants Denial of All Compensation

 The final, and most compelling reason for the denial of all compensation, relates to this former trustee's conduct. Even if Ms. Hill's applications were otherwise allowable, her egregious conduct warrants the denial of all compensation. The Fifth Circuit has observed:

"When persons perform duties in the administration of the bankruptcy estate, they act as 'officers of the court' and not private persons. *Callaghan v. Reconstruction Fin. Corp.*, 297 U.S. 464, 468, 56 S.Ct. 519, 521, 80 L.Ed. 804 (1936); *York Int'l Bldg. v. Chaney*, 527 F.2d 1061, 1068 (9th Cir.1975). As such, trustees and attorneys for trustees are held to high fiduciary standards of conduct". *Matter of Consolidated Bancshares*, 785 F.2d at 1255.

The filing of a fraudulent fee application by a trustee or attorney for the trustee is a flagrant violation of the obligation of candor to the court and fiduciary obligations to the estate. Where a trustee or attorney to the trustee misrepresents facts to the court with knowledge of their falsity and intent to deceive, courts have repeatedly denied compensation. *See, e.g. Matter of Futuronics Corp.*, 655 F.2d 463, 470–71 (2d Cir.1981), *cert. denied*, 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Endeco, Inc.*, 675 F.2d 166, 167 (8th Cir.1982); *Matter of Arlan's Dept. Store*, 615 F.2d 925, 943–44 (2d Cir.1979); *In re Devers*, 33 B.R. 793, 799 (D.D.C.), *aff'd without opinion*, 729 F.2d 863 (D.C.Cir.1984). Because fraud on the court and estate is misconduct of the

highest order, courts have denied all compensation despite benefits to the estate. See, e.g., *Matter of Futuronics Corp.*, 655 F.2d at 471; *In re Endeco*, 675 F.2d at 167.

890 F.2d 1312, 1323.

Ms. Hill has repeatedly failed to comply with orders of the court. Permitting her to continue the farce of seeking compensation while all the while disregarding the orders of the court would only burden the United States Trustee, the Successor Trustees, and this Court with an inordinate number of unnecessary hearings. All compensation must be denied.

## CONCLUSION

Accordingly, pursuant to these reasons, Ms. Hill is determined to be in contempt of the Orders of this Court and sanctions are imposed as follows:

1. Ms. Hill is denied compensation in all cases in which she previously served as Trustee. All requests for compensation filed in the cases listed on the Exhibits to the Order of Removal and to the Order to Compel are dismissed with prejudice.

2. Ms. Hill is ordered to pay to Mr. Eugene Hastings as Successor Trustee a total of $1,500.00 forthwith.

Alternatively, in the event the District Court should grant relief under Ms. Hill's *Rule to Show Cause,* the undersigned hereby reports and recommends that the District Court deny all compensation to Ms. Hill in all the cases from which she was removed as Trustee.

A separate and conforming Order shall enter.

## EXHIBIT "A"

## ITEMS RECOVERED FROM MS. HILL'S OFFICE

## SEPTEMBER 1, 1999

File folder marked Unclaimed Freight of Monroe, Inc., 98–30119

1. Handwritten notes on compensation. List reads:

| | | |
|---|---|---|
| 32 asset cases– | $19,250 | compensation 5=10% |
| 255 No asset cases | $15,300 | compensation |
| 32 asset cases | $898.83 | –expenses |
| | $35,448.83 | |

2. Notes relating to legal research.

3. Time sheet.

4. Unsigned affidavit of Trustee's Cost and Expenses with pencil notations.

5. Phone call slip, Clint, Dreamline, 10/31.

6. Phone call slip, regarding cancellation of March 4, 1998, hearing, with notes to call Sean Brown or Debbie Brown, 368–3999, regarding Unclaimed Furniture case.

7. Handwritten time and expense sheet.

8. Typed time and expense sheet.

9. Chronology of events in Unclaimed Freight case.

10. Calculation of Trustee's compensation with handwritten notes.

11. Copy of Letter from Albert Block to Ms. Hill re Unclaimed Freight case with copy of Dreamline's Objection to the Trustee's Objection to its Claim.

12. Copies of Court's Calendar from August 4, 1999, one with pencil notations.

13. Copy of letter from Ms. Hill to Polly Dumas, Unclaimed Freight, re Keeper Agreement and acknowledgment of bid for $5000.00.

14. Handwritten notes 2/4/98 regarding call from "Wade Baggett atty wife owns bldg. leased to Unclaimed Freight." Also has phone numbers for other individuals, and address for Debbie or Sean Brown.

15. Handwritten notes from hearing on Trustee's Objection to Claims hearing.

16. Letter from Harry L. Truslow, Bankruptcy Analyst, regarding Unclaimed Freight file, advising Ms. Hill to review certain items in the Statement of Financial Affairs prior to the 341 Meeting, with copies of the statements.

17. Two page document marked Inventory January 12, 1997, with Post–It Note reading "Same as items in sales invoice list in Keeper."

18. Copy of Hibernia's Objection to Trustee's Final Report.

19. Letter dated Feb. 6, 1998, to Sean Brown regarding his interest in purchase of inventory, request for bid, with copy of # 13, supra, and copy of $500.00 money order from Polly Dumas.

20. List of "Office Equipment" dated 1–15–98.

21. Notes titled: Records Check 2/27/98 No liens against Unclaimed Freight of Monroe in favor of Dreamline Mfg. Co. Sole lien # 37–58049 in favor of Hibernia Nat'l Bank filed 6/12/96–against inventory signed by Sean & Debra Brown UCC will show this-$15.00. Additional notes refer to "544(a), 9–301(1)(B) UCC–Unperfected security interest, purchase money loan." *[NOTE: THESE NOTA-TIONS APPEAR TO SHOW THAT MS. HILL KNEW OF THE HIBER-NIA ENCUMBRANCE AS EARLY AS 2/27/98, WELL IN ADVANCE OF THE DATE THE SALE WAS AP-PROVED AND IN SUFFICIENT TIME TO WITHDRAW THE RE-QUEST FOR THE SALE AND PREVENT THE UNWARRANTED SALE OF HIBERNIA'S COLLAT-ERAL]* Additional notes list the address for Maurice Linam, Bookkeeper.

22. Copy of letter from Ms. Hill to IRS, Chief, Special Procedures, dated Dec. 31, 1998.

23. Copy[?] of "Trustee Bill of Sale," to Unclaimed Freight of Ruston, dated April 13, 1998, with notes regarding La. Civil Code and Vendor's Privilege, copy of sales slips, and certificate of service of sale order, with copy of letter to Polly Dumas of Order authorizing sale and requesting final payment of $4,500.00 so that Ms. Hill can forward Bill of Sale.

24. Handwritten notations of expenses in various cases, four pages in length.

25. Handwritten notes from Hammett hearing involving bench warrant.

26. List of itemized expenses in Case Number 98–30448, Clarence Gilbreath, Jr.

27. Time sheets for Spohn Case, # 98–32038, with calculations of Trustee Expenses for Final report.

28. "Time sheet sample form," Case No. 98–32385, Angela Baugh, with notation: C:\wp51\Bky\Time sht Sample Form.

29. Time sheets in 27 cases. These documents are printed on one side of miscellaneous documents, including, for example, letters regarding the Mize case, No. 98–32214, mailing matrices, a domestic case in the 4th Judicial District Court, advertisements apparently received by facsimile transmission.

30. Copy of 1041 tax return, Unclaimed Freight, 1998.

31. Clerk's report of Additional Costs in Case No. 97–32050, Judy T. Forbes, and claims register.

32. Lists of patients, evidently pertaining to the Spohn Case, with various notations, including one with pencil notation "Updated 6/7/99." *[NOTE: MS. HILL WAS REMOVED AS A TRUSTEE BY ORDER DATED MAY 20, 1999.]*

33. Unidentified list of Trustee Expenses.

34. Unidentified Time sheet.

35. Sheet for request of Trustee's Compensation for Frisbee Case # 97–32345, and copy of Trustee's report of Dividend to be Paid to general unsecured Creditors Clerks' Report of Costs, Claims Register, mailing matrix, handwritten notes.

36. Copy of Letter from Ms. Hill to Harry Truslow, Bankruptcy Analyst, Office of the UST, regarding Charles R.

Hendrix, Case No. 97–30546, dated April 5, 1999, and attached copy of Corrected letter from Mr. Truslow to Ms. Hill dated March 31, 1999, requesting information, with handwritten notes.[1]

37. Copy of letters dated July 14, 1998, to Ms. Hill, from Allen Harvey, Monroe, Attorney, re Healthy Lifestyles, Case No. 98–30847, with copies of Bid forms from Polly Dumas for Unclaimed Freight case, and copies of a letter from Linda Mejias, Case No. 97–30589, postmarked April 4, 1998, to Ms. Hill regarding the State and Federal Tax Refunds, copy of bid form for Elijah Dale Hendrix Case, No. 95–31561. Copy of Dividend Checks to three creditors in case of Eddie L. Beckwith, Jr., Case No. 97–30530.[2]

38. Notations regarding Long Distance Calls, 2 pages, front and back.

39. Misc. Notes which cannot be tied to a specific case.

File Folder Labeled "ADVERSARY"

1. Time sheet Tracy & Sheila McClendon, Case No. 98–31797, letter to Ms. Hill from MBMNA America, Check Stubs for $2,400.00, "Bankruptcy Settlement," Demand letters dated Dec. 10, 1998, for recovery of "Preference" in the amount of $2,965.00, requesting full refund. A copy of the Debtor's check is attached. A second demand letter is dated Feb. 5, 1999. Certified Mail Receipts dated Feb. 5, 1999. Copy of letter from Ms. Hill to Anthony Muscelli, MBNA, dated March 23, 1999, agreeing to settle the claims of the estate against MBNA America for $2400.00. *[NOTE: Ms. Hill was appointed Attorney for the Trustee in this Case. At no time prior to her removal did she seek either as Trust-* ee or as Attorney for the Trustee permission to settle this controversy. See F.R.B.P. 9019.]* This section of the file contains notes regarding the Trustee's avoidance powers, a copy of her letter of appointment, demand letter to Discover Card, December 10, 1998, for recovery of preference $435.00 with copy of. Debtor's check, statements of accounts with MBNA, Discover, Letter from Theodore K. Manley, Attorney at Law, suggesting that Ms. Hill investigate possible preference claim invoking debtors balance transfers of $3,400 in August 1998, stating "Our client, Chevy Chase Bank, FSB, was the source of funds for these transfers." Handwritten note reads "Borrowed these cash advances from Chevy Chase Bank (Unsecured) to payoff MBNA and Discover."

2. Copies of pleadings in Healthy Lifestyles, Inc., case No. 97–30847, time and expense sheets, research notes, claims register. Note from Regions Bank regarding transmission of check for $1050.00 to cover "legal and court costs," demand letters on Regions Bank for Turnover, correspondence with Mr. Hobgood, Attorney for Regions Bank. Certified mail Receipts. Copies of pleadings. *[See Adversary Proceeding 99–3011]*

3. Copies of correspondence and pleadings in H & H Logging, Inc., Case No. 97–30522, regarding employment of Mr. Luster as Attorney for Ms. Hill as Trustee, copy of Mr. Luster's Application for Compensation, correspondence regarding termination of Mr. Leo Miller, Counsel to Debtor, Adversary Proceeding No. 97AP–3019.

File Folder with no label

1. Correspondence addressed to Peter Spohn from various sources, including requests for medical records from at-

---

1. *The Hendrix Case was closed April 20, 1999, prior to Ms. Hill's Removal as a Trustee.*

2. *The Hendrix Case was closed prior to the Removal of Ms. Hill as shown in Note 1; the Beckwith case was also closed on February 12, 1999, prior to her removal.*

torneys and former patients of Dr. Spohn.

2. Letter postmarked August 23, 1999, to Dianne Hill from Rusty Limares acknowledging that final payment has been made and requesting a statement to that effect.

3. Message dated July 26, 1999 from Shanna Vought re: Spohn requesting an opportunity to discuss payment arrangements on her account.

4. Documents labeled "Case Listing for Assets" dated 5/18/99 and 5/08/99 and listing the status and indicating the nature of the work done on various cases designated as asset cases.

5. Document labeled "Case Dates" listing dates of filing for various motions and other deadlines in cases designated as asset cases.

6. Unlabeled Time Sheet with hand written times.

7. Copy of an unlabeled Long Distance Calls log.

File Folder 95–3 Beard, Robert A. 98–30630

1. Time Sheet, list of expense, Trustee's expense and compensation worksheet with handwritten notations, Copy of Trustee's Final Report.

File Folder 97—Dillon, Hazel 98–31846

1. Time Sheet, "Form 1," Worksheet Form for "Trustee's Final Report of Distribution" and worksheet for Trustee's Compensation.

**THE FOLLOWING FILES *ALL* CONTAIN TIME AND EXPENSE SHEETS, EXCEPT AS NOTED. OTHERS CONTAIN RESEARCH NOTES, FORMS FOR COMPUTATION OF TRUSTEE'S COMPENSATION AND EXPENSES, SOME WITH HANDWRITTEN NOTES, AND PLEADINGS, COPIES OF ORDERS.**

File Folder 97–3 Dring, Charles Allen Dring, Shirley Jean Russell, 98–31945 (This file contains Canceled check Clerk of Court, Dianne Hill, Trust, March 26, 1999)

File Folder Fulford, Charles E. Jr. 99–30259

File Folder Gibson, Roger Ellis and Myrtis 98–30258

File Folder Hammett, Audrey L. 97–30318

File Folder Healthy Lifestyles, Inc. 97–30847

File Folder Hightower, Jerry Diane 97–30721

File Folder Kelly, Ronnie Lynn and Tina Michelle Magee 98–31473

File Folder Quimby, Bette Florence Simpson 98–31838

File Folder Thomas, Vernon L. and Vickie Patrick 98–31906

File Folder Sweet, Rita Marie 97–32090

File Folder Mize, James Larry and Nanci Marcia 98–32214

File Folder McLendon, Tracy Joe and Sheila Ann 98–31797

File Folder McCurdy, Ralph Lee and Judy 99–30281

File Folder Edney, Billy Joe and Sharon 98–31824

File Folder Lonidier, Michael Glenn and Melanie Alayne 99–30312

File Folder Kindrix, Gorden Lindell Jr. and Gwendolyn Nadine 98–32311

File Folder Johnson, Terry and Deborah 98–30944

File Folder Hendrix, Charles R. Jr. 97–30546

File Folder Hall, Scott and Wendy Allbritton 97–32454

File Folder H & H Logging, Inc. 97–30522

File Folder Frisbee, Charles 97–32345

File Folder Fontana, Kristie Wingfield 98–30001

File Folder Dobson, Charlie H. and Frances C. 98–32054

File Folder Davis, Madelon Faye 97–30289 [Note: The correct number of this case is 97–32089]

[Empty file folder]

File Folder Custer, Christopher T. and Tina Bliss McNeil 98–31224 [Empty file folder]

File Folder Brumfield, James P. and Margaret E. 98–31566 [Empty file folder]

File Folder Brooks, Catherine Moore 98–

31447

File Folder Baugh, Angela 98–32385

File Folder Spencer, Johnny D. Sr. 98–32183

## EXHIBIT "B"

### ITEMS RECOVERED FROM COMPUTERS WITHIN MS. HILL'S OFFICE

#### SEPTEMBER 1, 1999

Note: Items recovered relating to cases that were closed prior to Ms. Hills removal are excluded from this listing.

Directory labeled "ASSETS" containing documents relating to the management of assets of different estates including correspondence requesting both records pertaining to assets of the estate and the turnover of assets of the estate.

In Re Bruce, William L. Sr., 99–30466

In Re Healthy Lifestyles, Inc., 97–30847

In Re Dobson, Charlie H. and Frances C., 98–32054

In Re Purvis, Kevin M. and Benita B., 99–30255

In Re Fulford, Charles E. Jr. and Shannon P., 99–30259

In Re Spohn, Peter John and Verna Rena, 98–32038

In Re Dillon, Hazel, 98–31846

In Re McLendon, Tracy Joe and Sheila Ann, 98–31797

In Re Davis, Madelon Faye, 97–32089

In Re Clement, Daniel Heath, 98–32236

Directory labeled "SALES" containing a Consensual Sale Application, and correspondence relating to the sale of assets in In re Bolden, Doyne C., 96–30540

Directory labeled "KEEPER" containing Keeper Agreements, correspondence and Consensual Sale Applications in the following cases:

In Re Fulford, Charles E. Jr. and Shannon P., 99–30259

In Re Stokes, William A. Sr., 99–30398

In Re Wagoner, Shawn Daran and Erika Nelson, 99–30539

In Re Nielsen, Melissa M., 98–30027

In Re Spohn, Peter John and Verna Rena, 98–32038

In Re Bruce, William L. Sr., 99–30466

In Re Myers, Richard D. and Laurie Varner, 99–30353

In Re Hendrix, Charles R. Jr., 97–30546

In Re Holzem, John Arthur, 99–30411

In Re Mize, James Larry and Nanci Marcia, 98–32214

In Re Allen, Walter Ray and Linda Dianne, 98–32343

In Re Spencer, Johnny D. Sr., 98–32183

In Re Ray, Roy L. and Faye T., 99–30024

In Re Gorman, Shane M., 98–31958

In Re Nored, Shari Ann, 98–32187

In Re Gorman, Shane M., 98–31958

In Re Mize, James Larry, 98–32214

In Re Spencer, Johnny D. Sr., 98–32183

In Re Wilson, Deborah Kaye Brown, 97–30992

Directory labeled "AUCTION" containing Applications to Sell Assets of the Debtor in the following cases:

In Re McCurdy, Ralph Lee, 99–30281

In Re Quimby, Bette Florence Simpson, 98–31838

In Re Brumfield, James P., 98–31566

In Re Dring, Charles Allen, 98–3194 (Wrong case number; should be 98–31945)

In Re Dobson, Charlie H., 98–32054

In Re Hammett, Audrey L., 97–30318

In Re Thomas, Vernon L., 98–31906

In Re Kelley, Ronnie Lynn, 98–3147 (Wrong case number; should be 98–31473)

In Re Healthy Lifestyles, Inc., 97–30847

Directory labeled "CLAIMS" containing Objections to Claims in the following cases:

In Re Healthy Lifestyles, Inc., 97–30847

In Re Kelley, Ronnie Lynn, 98–31473

In Re Mize, James Larry, 98–32214

In Re Frisbee, Charles, 97–32345

In Re Unclaimed Freight of Monroe, Inc., 98–30119

In Re Bolden, Doyne C., 96–30540

Directory labeled "KEEPER" containing Keeper Agreements, correspondence and Consensual Sales in the following cases:

In Re Mize, James Larry and Nanci Marcia, 98–32214

In Re Raborn, John Mark and Mickie Pierce, 99–30498

In Re Jones, Hubert A., 99–30147

In Re Bruce, William L. Sr., 99–30466

In Re Harnar, Ronald Dean Jr. and Heather Dawn, 97–32587

In Re Fulford, Charles E. Jr., 99–30259

In Re Casse, Sharon Ann, 99–30453

In Re Stokes, William A. Sr., 99–30398

In Re Howell, James, 99–30235

In Re Mize, Nora Mae Barber, 99–30186

In Re Robert, Charles Harvey, 99–30519

In Re Johnson, Cora M., 99–30457

In Re Jones, Hubert A., 99–30147

In Re Singleton, Jerry Kevin, 99–30248

In Re Mize, Nora Mae Barber, 99–30186

In Re Vincent, Rodney Joseph, 99–30537

Directory labeled "COLLECTIONS" containing lists of Spohn patients and demand letters.

Directory labeled "EXEMPTIONS" containing Objections to Property Claimed Exempt by Debtors in the following cases:

In Re Quimby, Bette Florence Simpson, 98–31838

In Re Gibson, Roger Ellis and Myrtis, 98–30258

In Re Brumfield, James P. and Margaret E., 98–31566

In Re Rinehart, Bradley Randalph and Sandra Lynn Scheffler, 98–30768

Directory labeled "HAMMETT" containing a Motion to Dismiss Adversary, an Attorney Fee Application, a Motion to Compromise Adversary, an Application to Hire Attorney, a Pretrial Statement, and a Discovery Request Complaint in In Re Hammett.

Directory labeled "HEARINGS" containing

Notice of No Objections in:
In Re Jordan, Billy Wayne and Deborah Ann, 98–32341

In Re Jarmon–Wall, Kerri Lynn, 98–32232

Motion to Compel Turnover in:
In Re Healthy Lifestyles, Inc., 97–30847

Directory labeled "341" containing Trustees Objection to Motion to Excuse Debtor in:

In Re Snowden–Wiley, Joyce, 99–30241

Directory labeled "ADVERSARY" containing the following:
In Re Jerry Diane Hightower, 97–30721—MOTIONS TO HIRE ATTORNEYS, COMPROMISE CLAIM OF ESTATE AND PAY ATTORNEYS FEES, and TO REDUCE NOTICE TO 19 DAYS.

In Re Madelon Davis, 97–32089—REQUEST FOR TITLE TO CAR

In Re Frisbee, Charles, 97–32345 APPLICATION TO ATTORNEYS

In Re Brumfield, James P. and Margaret E., 98–31566 MOTION TO HIRE ATTORNEYS TRUSTEE V. DAVIS, AP98–3034—OBJECTION TO DISCHARGE AND MOTION FOR DEFAULT JUDGMENT.

Subdirectory labeled "HEALTHY LIFESTYLES" containing the Complaint, Motion For Default, Motion to Hire Attorney, and Pretrial Statement.

Subdirectory labeled "JONES" containing the Application to Hire Attorney and a Motion to Compromise.

Subdirectory labeled "McDONALD" containing the Motion to Hire Attorney

Subdirectory labeled "McLENDON" containing the Complaint and Motion to Hire Attorney

Directory labeled "ASSETS" containing various motions and correspondence related to the following:

In Re Spohn, Peter John and Verna Rena, 98–32038—Motion to Release Funds to Secured Creditor.

In Re Fulford, Charles E. Jr. and Shannon P., 99–30259—Motion for Turnover of Property

In Re Jones, Felix Allen and Jacqueline Denise, 98–31403—Motion for Turnover of Property

In Re Mize, James Larry and Nanci Marcia, 98–32214

In Re McLendon, Tracy Joe and Sheila Ann, 98–31797—offer to debtors to settle trustees request for turnover of debtor's checking account balance.

Directory labeled "REPORTS" containing TFR's and TDR's in the following

In Re Forbes, Judy T., 97–32050

In Re Unclaimed Freight of Monroe, Inc., 98–30119

In Re Mejias, John Jr. and Linda K., 97–30589

In Re Beard, Robert A., 98–30630

### SUPPLEMENTAL AND AMENDED REASONS FOR DECISION

This Court filed Reasons for Decision on October 29, 1999, concerning the Order to Show Cause why Dianne L. Hill should not be held in contempt for failure to comply with Orders of the Court. Pursuant to those reasons, Ms. Hill was found in contempt of this court and sanctions were imposed.

The original reasons noted that funds totaling $864.00 were retrieved from Ms. Hill's office on September 1, 1999, which funds were included in documents recovered from Ms. Hill's office after she testified in the case of *Peter John Spohn and Verna Rene Spohn,* Case No. 98–32038. The extensive documents were introduced as *Court Exhibit No. 6, in Globo.* The documents are also described in Exhibit "A" to the Reasons.

After the filing of the original reasons, additional funds were discovered in the extensive documentation pertaining to another case. These funds consist of Regions Bank Official Check No. 731459718, in the amount of $1050.00, dated May 28, 1999, payable to Dianne Hill, Trustee, and were located together with correspondence from Mr. Ronald P. King, Executive Vice President of Regions Bank. These funds relate to the *Healthy Lifestyles* Case, No. 97–30847, and the settlement of the related Adversary Proceeding No. 99–3011, styled *Dianne Hill v. Regions Bank.*

**IT IS FURTHER ORDERED** that the Clerk of the Bankruptcy Court be and is hereby to substitute a copy of the foregoing check for the original in *Court Exhibit No. 6, in Globo,* from the September 1, 1999, hearing in the case of *Peter John Spohn and Verna Rene Spohn,* Case No. 98BK–32038.